WALLACH, Circuit Judge,
dissenting.
General Dynamics (“GD”) is required to project future values of its pension funds. To. do so, it takes the actual market value of the fund and applies an assumption about the fund’s rate of future growth. Both the Government and GD agree that the appropriate assumed growth rate is 8% per annum. However, the parties do not agree as to what value the 8% growth rate should be applied. The Government argues that the 8% rate must be applied to the value of the fund on January 1 of the year that GD makes the projection. GD argues that it may use the most current value of the fund and is not required by the CAS to ignore what actually happened in the market between January 1 and the time of valuation. GD is correct.
The ASBCA’s decision denying GD’s appeal rests on two invalid assumptions, either of which, if corrected, is sufficient to mandate reversal: First, GD’s use of current, intra-year data is not an “actuarial assumption” within the meaning of CAS 412; Second, even if the data used is an *1381 actuarial assumption, the actuarial assumption does not result in “distortions caused by short-term fluctuations.” CAS 412—50(b)(4). For each reason, the Government did not carry its burden to prove a CAS violation. I respectfully dissent from the majority’s contrary holding.
1. The Use of Current, Intra-Year Data is Not an Actuarial Assumption
“Actuarial Assumption” is defined by the CAS as “an estimate of future conditions affecting pension cost____” CAS 412-30(a)(3). The intra-year data used by GD is the market value of its pension fund on a chosen date. This is a present reality, not an estimate of a future condition. Applying the agreed-upon annualized 8% growth rate to the intra-year data does not convert the data itself into a “future condition.” Thus, CAS 412 is inapplicable to GD’s decision to use intra-year data rather than January 1 data, because neither is an actuarial assumption.
Common sense dictates that the data to which an assumption is applied does not itself become an assumption. Otherwise, the values to which actuarial assumptions are applied would become “actuarial assumptions” themselves. Examples of actual actuarial assumptions offered by the regulation include: “mortality rate, employee turnover, compensation levels, earnings on pension plan assets, [and] changes in value of pension plan assets.” CAS 412-30(a)(3). GD’s use of intra-year data as the baseline to which the agreed upon actuarial assumption is applied is nothing like these enumerated examples. See, e.g., Freeman v. Quicken Loans, Inc., — U.S. -, 132 S.Ct. 2034, 2042, 182 L.Ed.2d 955 (2012) (noting the “commonsense canon of noscitur a sociis, which counsels that a word is given more precise content by the neighboring words with which it is associated” (internal quotation marks and citation omitted)).
The majority agrees that “[a]s a matter of principle, ... a value of the plan assets on a given day is a historical fact, not an actuarial assumption.” Majority Op. at 1379. However, it concludes that the decision to use a day other than January 1 is an actuarial assumption because it “effectively substitutes] a new rate and base date in place of the. original 8% growth rate from January.” Id.
That analysis erroneously assumes that calculating the projected market value for next January 1 must begin from the market value on January 1 of the current year. However, the agreed-upon assumption of 8% annualized growth does not require growth at 8% for a year, but simply assumes 0.0219% growth per day. The assumption of annualized 8% growth can thus be applied to the fund’s market value on July 1 just as it may be applied to the value on January 1.
The Government provides no reason why the January 1 fund value of the previous year should carry. talismanie significance in calculating the projected market value on January 1 for next year and years to come. As pointed out by GD, “[t]here is nothing ‘long-term’ about using January 1 numbers as a baseline. The January 1 fund value is not an average of the fund’s value over a period of time, it is simply the value of the fund on a given date, just like the value of the fund on any other date, like June 15 or August 1.” Reply Br. at 2. Once we are freed from the January 1 start date, it becomes clear that applying the 8% growth rate to the intra-year market value does not result in an improper “blended” rate, but is simply an application of the 8% growth rate to market data.[1]
*1382 The. majority’s conclusion to the contrary unnecessarily brings CAS 412 into conflict with the FAR requirement that a contractors’ forward pricing rate, “include cost or pricing data that are accurate, complete, and current as of the date of submission____” FAR 42.1701(b). This FAR provision requires use of up-to-date information to calculate the forward pricing rate. See also FAR 2.101 (forward pricing rates must be “reasonable projections of specific costs.... ”). On its face, this requirement is consistent with the CAS goal of “uniformity and consistency.” CAS 412-20(a). Properly interpreted, these provisions together require that actuarial assumptions be consistently applied to accurate and current data, which is consistent with GD’s reliance on intra-year data. ,
The Government has a reasonable interest in uniformity. However, the precatory language of CAS 412 promoting “uniformity and consistency” is not an independent obligation, and it is the Government’s burden to persuade the court that the approach employed by GD is in violation of the applicable regulations. The Government has. not carried this burden.[2] Indeed, if the Government is concerned about uniformity, it can take steps such as requiring contractors to estimate intra-year values on particular dates or based on the occurrence of particular events. The answer is not to bend the provisions of the CAS to apply to a situation it plainly should not.
2. The Use of Current, Intra-Year Data Does Not Result in “Distortions Caused by Short-Term Fluctuations”
Even if GD’s method is to be considered an “actuarial assumption,” it does not result in “distortions caused by short-term fluctuations.” The record is devoid of evidence supporting this proposition and is fatal to the Government’s position.
Instead, the record shows that GD’s method results in more accurate projections. It is uncontested that the actual performance of the market in the first months of 2008 departed significantly from the hypothesized 8% rate. The Government does not dispute that GD’s method resulted in a more accurate' projection of the fund’s future market value for January 1, 2009. But it argues that there is nevertheless a “distortion” because the later 2010, 2011, and 2012 values may not be more accurate. Appellee’s Br. at 20. In response, GD offers the following information showing that GD’s projection was more accurate than the Government’s proposed projection for all known years:
*1383 [[Image here]]
Reply Br. at 15. The fact that the actual performance of the market in the first months of 2008 departed significantly from the hypothesized 8% rate does notA establish that there is any “distortion” involved in taking account of that real-world information. To the contrary, using more up to date data resulted, as may be expected, in more accurate projections.[3]
The majority states that “[a]s is self-evident, the use of a midyear value inherently reflects such short-term fluctuations in relation to January 1, because that value is based on the partial-year, short-term trend since January 1.” Majority Op. at 1379. However, a review of the record illustrates there is no evidence supporting the proposition that GD’s practice introduces distortions, nor is it “self-evident.”
The majority also finds fault with the “random” nature of the days chosen by GD to update their retirement forward pricing rates. See Majority Op. at 1380. However, the ASBCA stated that GD’s pricing rates “may be updated and resubmitted” in response to events such as “a significant change in benefit provisions,” a “significant change in the future workforce projections,” a “significant restructuring of business units or workforces,” “[acquisitions, divestitures, plan mergers,” “regulatory changes or new legislation” or “bidding on a major new contract.” Appeal of General Dynamics Corp., 11-2 B.C.A. ¶ 34787, 2011 WL 2624447, at *7 (“ASBCA Decision”). In fact, for 2002 through 2006, the parties stipulated to the specific reasons that GD conducted intra-year valuations—reasons that had nothing to do with changes to external market conditions. J.A. 1375-77 (reasons for conducting new valuations included addition of new employees to pension plan, additions and sales of business segments, and statutory changes such as the expiration of certain provisions of the Pension Funding Equity Act of 2004). These types of events plainly do not occur at the exact same time or with the exact same frequency from year to year.
Notwithstanding this reasonable explanation and that “there is no evidence that General Dynamics self-selected a midyear date to take advantage of a short-term market change,” the majority states its concern that this methodology could be used in the future to game the system. Majority Op. at 1380. This concern, however, is unsupported by the record. The *1384 method at issue does not give GD any kind of advantage over the Government. Use of GD’s method following a market slump may result, as here, in increased costs to the Government to make up for the shortfall. The inverse, however, is also (and historically has been) true: if the market booms and growth rates in the earlier part of the year are higher than an 8% annual rate, the Government’s costs will be lower. See ASBCA Decision at *16 (noting range of intra-year rate growth rates above and below 8%).[4]
There is no evidence that GD’s use of intra-year data results in distortions caused by short-term fluctuations. To the contrary, the record reveals that GD’s method has proven more accurate.
We should not require companies to abandon decades-long practices that are compliant with the CAS for less accurate calculating methods suggested by the Government. I respectfully dissent.

. Both the majority and the ASBCA use the phrase "blended rate.” However, this term is *1382 inaccurate. GD does not, as the majority claims, combine two rates, Majority Op. at 1377-78, but applies one rate, pro-rated, to the value of the fund at a given day.

. Arguably, for the sake of uniformity and consistency, GD’s practice employed for over twenty-five years should continue to be the standard practice.

. This result is logical. GD and the Government use an identical method of calculating projected pension market values—add an 8% annual rate to the projected end-of-year value. The more accurate the first projection is, the more accurate subsequent estimates will be.

. Interestingly, the Government did not object to GD's use of intra-year fund values in its retirement plan forward pricing rate calculations during the years when the market did well and the Government was helped by GD’s calculation. Additionally, the Government does not object to the use of real time updated information to calculate GD’s other retirement plan forward pricing rates, including updated plan membership data, changes in benefits, new coverage, and other information.